# In the United States Court of Federal Claims

No. 5-505T
(Filed: June 7, 2017)

* * * * * * * * * * * * * * * * * * * * * * * * *

BRAD HABENICHT, *et. al.*,

    *Plaintiffs*,

v.

THE UNITED STATES,

    *Defendant*.

Income tax refund; Assessment period; Correcting assessment to reflect intent of the parties.

* * * * * * * * * * * * * * * * * * * * * * * * *

*Thomas E. Redding*, Houston, TX, for plaintiffs.

*Benjamin C. King, Jr.*, Department of Justice, Tax Division, Court of Federal Claims Section, With whom were *David A. Hubbert*, Acting Assistant Attorney General, *David I Pincus*, Chief, Court of Federal Claims Section, *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, for defendant.

OPINION

BRUGGINK, *Judge*.

Plaintiffs filed their complaint on April 28, 2005, seeking a refund of federal income tax, interest, and penalties for tax years 1980, 1981, 1984, and 1986. This case is one of several involving Greenberg Brothers partnerships that have been the subject of much litigation in this court. In October of 2005, we stayed this case pending the outcome of *Bush, et al. v. United States*, 78 Fed. Cl. 76 (2007), *affd.*, 655 F.3d 1323 (Fed. Cir. 2011). After *Bush* was resolved and settlement discussions failed, plaintiffs filed an amended

complaint on September 15, 2016. All that remains is plaintiffs' claim for a refund of taxes that the Internal Revenue Service ("IRS") admits it mistakenly assessed for the wrong tax year. The IRS issued two "Prompt Assessment Billing Assembly" packages for 1986. One that reflected the amount prior documents identified as due for 1986 and another that reflected the amount prior documents identified as due for 1985. Plaintiffs paid the amounts due with respect to both assessments in full in December of 2000 and later filed a refund claim with the IRS for 1986. The IRS disallowed that claim on April 28, 2003, and plaintiffs timely filed suit in this court exactly two years later. Plaintiffs and defendant have since cross moved for summary judgment. The matter is fully briefed, and we held oral argument on March 16, 2017. Because plaintiffs have failed to show any overpayment, we deny plaintiffs' motion for summary judgment and grant defendant's cross-motion for summary judgment.

BACKGROUND

Plaintiff, Marla Flynn Habenicht, through Wilderness Village Associates, held an indirect interest in the Greenberg Brothers Partnership #12, a/k/a Lone Wolf McQuade ("LWM") limited partnership in 1983. The IRS later audited LWM and issued a Final Partnership Administrative Adjustment which disallowed certain deductions plaintiffs claimed stemming from LWM's reported losses. She and her husband, Brad Habenicht, entered into a closing agreement with the IRS on April 18, 2000, regarding their indirect interest in LWM.[1] Pursuant to the closing agreement, all LWM losses that exceeded the Habenichts' $50,000 capital contribution that they had claimed as deductions on their 1983-1986 tax returns were disallowed. The IRS subsequently prepared Form 4549A-CG on August 29, 2000, which showed computations for the additional taxes plaintiffs owed for 1984-1986 as a result of the disallowed deductions. The form included a summary of taxes, penalties, and interest that showed the values in the following table.[2]

---

[1]This closing agreement was preceded by another, nearly identical, closing agreement signed by plaintiffs on behalf of Wilderness Village Associates. The two closing agreements are discussed in more detail below.

[2] The only copies of Form 4549A-CG before the court have vertical lines drawn on the first page through the columns for the 1984 and 1985 tax years. The second page, which includes the summary, does not have similar

(continued...)

| Year | 1984 | 1985 | 1986 |
|---|---|---|---|
| Balance Due | $2,022.00 | $8,627.00 | $12,403.00 |
| Penalties | 0 | 609.00 | 1,388.85 |
| Interest | 6,378.79 | 24,991.47 | 32,755.93 |
| Tax Motivated Transaction Interest | 2,768.00 | 9,628.36 | 10,489.44 |
| Amount Due | $11,168.79 | $43,855.83 | $57,037.22 |

Pls.' Ex. A at 2.

On October 10, 2000, the IRS issued two "Prompt Assessment Billing Assembly" packages (Form 3552(C)) that resulted in two separate assessments for 1986. One of the assessments indicates the proper amount for 1986 and is not contested. The other 1986 assessment relates to the $8,627.00 tax amount plus penalties and interest indicated for 1985 on the Form 4549A-CG; plaintiffs' claim seeks a refund of the taxes paid pursuant to this assessment. As plaintiffs point out, while the Prompt Assessment Billing Assembly form for the $8,627.00 assessment says that it is for the tax period ending on December 31, 1986, "all of the attachments to [it], (specifically the Form 2859 'Request for Quick or Prompt Assessment', the 'event Summary Report', and the Form 5344 'Examination Closing Record') refer to 1985, not 1986." Pls.' Mot. Sum. J. 3. In its answer to plaintiffs' amended and restated complaint, defendant admits that "[t]he tax, interest, and penalty that the IRS determined plaintiffs owed for 1985, was erroneously assessed with respect to plaintiffs' 1986 tax year." Answer ¶ 9.

---

[2](...continued)
markings. Plaintiffs argue that the lines suggest that the IRS may not have intended this version of the form to be the final computation for those tax years. Given the consistent appearance of the values on this form in later documents and defendant's assertion that such lines were not on the original document, we are satisfied that the IRS intended this to be the final computation for the 1985 tax year.

Plaintiffs paid the amount of both assessments on December 29, 2000. On December 27, 2002, they filed a refund claim with the IRS that included, among other things, a demand for a refund of the $8,627.00, 1985 tax liability plus penalties and interest that was erroneously assessed for 1986. The IRS denied their claim in April of 2003, and plaintiffs filed suit in this court in April of 2005.

## DISCUSSION

We hold that plaintiffs are not entitled to a refund of the taxes they paid that were erroneously assessed for 1986. In reaching this conclusion, we find that the incorrect year showing on the assessment amounts to nothing more than a typographical error and that plaintiffs were not misled by the error. Accordingly, we deem the assessment corrected to refer to the indisputably correct tax year, 1985. At the time the payment was made, the parties understood the $8,627.00 plus penalties and interest that was erroneously assessed for 1986 to be due for the 1985 tax year, and, in any event, plaintiffs paid the amount at issue for 1985 while the relevant assessment period was still open for assessment.

We have jurisdiction to hear claims for "the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. §1346(a)(1) (2012). In a tax refund suit, "the taxpayer bears the burden of proving his or her case by a preponderance of the evidence." *Lua v. United States*, 123 Fed. Cl. 269, 273 (2015). Here, plaintiffs must show that they made an overpayment in order to be successful on their refund claim. *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). "The term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto." 26 U.S.C. § 6401 (2012). "Taxes may be properly due even if the IRS does not 'assess' them upon the taxpayer, since tax liability generally arises automatically from statute." *Lua*, 123 Fed. Cl. at 275. Our finding that the mistaken year showing on the assessment and related documents is nothing more than a clerical error and our decision to deem it corrected renders many of plaintiffs' arguments irrelevant. Below, we will discuss that finding and then address whether plaintiffs made the payment within the limitations period and whether plaintiffs in fact owed the amount at issue.

4

To begin with, it is clear from the record that the amount mistakenly assessed for 1986 was the increase in plaintiffs' tax liability for 1985 and that the parties understood this at the time the payment was made. The amount, plus penalties and interest, was the result of a computational adjustment pursuant to a closing agreement that plaintiffs signed in their individual capacity that disallowed certain losses previously claimed by plaintiffs. Form 4549A-CG shows the additional $8,627.00 as due for 1985, and, as discussed above, we are not persuaded by plaintiffs' arguments attempting to cast doubt on the validity of that document. Moreover, as defendant points out, plaintiffs acknowledged that they owed at least some additional tax for 1985 when they filled out Form 843 "Request for Net Interest Rate of Zero Rev. Proc. 99-43" in April of 2002. Def.'s Ex. 10.

Even if we were to not deem the erroneous assessment as valid for 1985 due to the obvious typographical error, plaintiffs have failed to show that they are entitled to a refund because they have not demonstrated that they either paid more than the amount legally due or made the payment at issue outside the assessment period for 1985. Without such a showing, plaintiffs' claim must fail. *See Crompton & Knowles Loom Works v. White*, 65 F.2d 132, 134 (1st Cir. 1933); *see also* Rev. Rul. 85-67, 1985-21 I.R.B. 12 ("Where taxes and interest legally due have been paid before the expiration of the period of limitations for assessment . . . they cannot be recovered by the taxpayer merely because they have not been formally assessed.")

In their response to defendant's cross-motion for summary judgment, plaintiffs argue that they paid the tax amount at issue after the one-year limitations period for assessing the 1985 tax year expired. 26 U.S.C. § 6229 (f) (2012). Specifically, plaintiffs believe that the operative date for the beginning of the one-year assessment period is October 18, 1999. This is the date that the IRS accepted a closing agreement that Mrs. Habenicht signed on behalf of Wilderness Village Associates, the partnership through which Mrs. Habenicht held her interest in LWM. Plaintiffs later executed a nearly identical closing agreement—this time in their individual capacity—that was accepted by the IRS on April 18, 2000 (the "Individual Closing Agreement"). Defendant responds that the Individual Closing Agreement triggered the one-year assessment period. Plaintiffs paid the disputed tax liability on December 29, 2000, meaning that their payment was within the assessment period under defendant's view but two months outside the assessment period under plaintiffs' view.

We hold that the assessment period closed on April 18, 2001, one year after the IRS accepted the Individual Closing Agreement. Thus plaintiffs made the payment within the assessment period for 1985. The Individual Closing Agreement expressly provided that the "taxpayers' partnership items are converted to non partnership items effective as of the date of this closing agreement is accepted on behalf of the commissioner." Def.'s Ex. 1 at 2. Also, as defendant points out, the Individual Closing Agreement further provided that it "supersedes any prior agreement entered into between the taxpayers and the Internal Revenue Service." *Id*.

Having decided that plaintiffs made the payment for 1985 within the assessment period, the question then becomes whether plaintiffs paid an amount that properly reflected their tax liability. We hold that the plaintiffs actually owed the amount at issue for 1985 and have failed to show any overpayment of taxes. Thus plaintiffs' claim for a refund must fail. As discussed above, the $8,627.00 additional tax liability for 1985 was the result of a computational adjustment made after certain losses were disallowed.[3] Thus there is no material question of fact that defendant is entitled to judgment as a matter of law.

## CONCLUSION

In sum, plaintiffs have failed to establish any overpayment of taxes. Accordingly, we deny plaintiffs' motion for summary judgment and grant defendant's cross-motion for summary judgment. The Clerk of Court is directed to enter judgment for defendant and dismiss the complaint. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

---

[3]Plaintiffs argue that, if the correct year was shown on the assessment and notice and demand for payment, they could have used income averaging among other options to reduce their tax burden for 1985. Plaintiffs admit that there is nothing in the record demonstrating their taxable income for 1982, which is a necessary input in order to perform the income averaging computation. *See* Pls.' Resp. 21.